528 P.2d 884

**Jack WATERMAN, a partner, d/b/a Tucumcari Ice Company, a partnership, Petitioner,**

v.

**George CIESIELSKI, Respondent.**

**No. 9980.**

Supreme Court of New Mexico.

Nov. 8, 1974.

Rehearing Denied Dec. 11, 1974.

Oldaker & Oldaker, William J. Lock, Albuquerque, for petitioner.

Thomas D. Schall, Bradford H. Zeikus, Albuquerque, for respondent.

## OPINION

OMAN, Justice.

This cause is before us on a writ of certiorari directed to the New Mexico Court of Appeals, which reversed the judgment of the district court entered upon a jury verdict for the defendant and ordered the cause remanded to the district court for a new trial. Ciesielski v. Waterman, 86 N. M. 184, 521 P.2d 649 (Ct.App.1974). We reverse the Court of Appeals and affirm the judgment of the district court.

The sole issue raised on appeal was whether the district court erred in refusing to instruct the jury on the doctrine of res ipsa loquitur. The plaintiff tendered and the court refused two requested instructions on this doctrine. The requested instruction, which substantially conformed to N.M.U.J.I., Civ. 12.14 (1966) and which is the only one with which we need concern ourselves in these proceedings, stated in pertinent part:

"In order for the jury to find the defendant negligent under this doctrine [res ipsa loquitur], the plaintiff has the

burden of proving each of the following propositions:

"1. That the injury to plaintiff was proximately caused by a crated motor which was under the exclusive control and management of the defendant.

"2. That the event causing the injury to the plaintiff was of a kind which ordinarily does not occur in the absence of negligence, on the part of the person in control of the instrumentality."

■ N.M.U.J.I. 12.14, supra, anticipates a statement concerning the occurrence or event out of which the injury allegedly arose, as well as one concerning the instrumentality which proximately caused the injury. However, we do not base our decision on this deficiency in the requested instruction.

As already stated, this requested instruction is consistent with N.M.U.J.I. 12.14, supra. It is also in accord with the decisions of this court and the New Mexico Court of Appeals, which have been consistent in announcing the essentials of this rule. Gray v. E. J. Longyear Company, 78 N.M. 161, 429 P.2d 359 (1967); Hisey v. Cashway Supermarkets, Inc., 77 N.M. 638, 426 P.2d 784 (1967); Gonzales v. Shoprite Foods, Inc., 69 N.M. 95, 364 P.2d 352 (1961); Akin v. Berkshire, 85 N.M. 425, 512 P.2d 1261 (Ct.App.1973); Tapia v. McKenzie, 83 N.M. 116, 489 P.2d 181 (Ct.App.1971).

■ Had it been intended that only "control and management" by the defendant of the instrumentality and the occurrence out of which the injury arose were sufficient to invoke the doctrine, the adjective "exclusive" would not be needed. To define the doctrine as has the majority of the Court of Appeals in its decision is to render meaningless the word "exclusive." In at least one case, this court has used, in conjunction with "exclusive," the adjective "sole" to emphasize that the instrumentality and occurrence proximately causing the injury must be under the control of the defendant alone. Gonzales v. Shoprite Foods, Inc., supra.

The requirement of exclusiveness of control in defendant is clearly consistent with and essential to the basis for the recognition and justification of the doctrine, to wit: " '[T]he postulate that under the common experience of mankind an accident of the particular kind does not happen except through negligence,' " and " 'the fact that ordinarily the cause of the injury is accessible to the party charged [the defendant] and inaccessible to the person injured [the plaintiff].' " Tafoya v. Las Cruces Coca-Cola Bottling Company, 59 N.M. 43, 278 P.2d 575 (1955), quoting from Hepp v. Quickel Auto & Supply Co., 37 N.M. 525, 25 P.2d 197 (1933).

The plaintiff's own testimony shows the following:

1. He was and had been for many years a driver of a large semi-truck-trailer, hauling freight for his employer between Albuquerque, New Mexico and Amarillo, Texas.

2. His duties with relation to unloading of articles of freight at places such as that of defendant, who was a commission agent for plaintiff's employer, was to assist in any way he could.

3. On the day of his injury for which he seeks recovery in this cause, he backed his tractor-trailer so that the rear of the trailer was close to defendant's loading dock, and then began unloading the freight which was to be unloaded at that point. Defendant's employee, a Mr. Hill, came out shortly and helped him unload until, to use plaintiff's own language, "[W]e finally got the little pieces off and come to this big motor, which I was under the impression it was eight hundred pounds."

4. This motor was crated and was sitting near the rear of the trailer, close to one of the inside walls of the trailer, and on a crate about 30 inches above the trailer floor, which made it about 36 inches above the surface of the dock.

5. He said he " * * * spoke to Mr. Hill and asked him what he intended to do with this motor * * *." Mr. Hill re-

plied, "Well, that's no problem to get the motor off." Plaintiff then asked, "Well, how do you intend to do this, we don't have no forklift, \* \* \* ?" Mr. Hill answered, "I have unloaded freight like this before and bigger stuff," to which plaintiff responded, "Well, I don't know about it." Mr. Hill then said "You go get the Johnson Bar and I'll get some skids."

6. Mr. Hill secured and placed the skids and plaintiff secured the bar, as requested by Mr. Hill. Plaintiff then got in the trailer to push on the crated motor, but could not move it enough to get it onto the skids. Mr. Hill then secured a bar and got in the trailer with plaintiff, and between his efforts in using the bar and plaintiff's efforts in pushing, "we got it up on the skids."

7. The motor was sitting on the skids, and Mr. Hill directed plaintiff to get to one side of the motor on the outside of the trailer, and he, Mr. Hill, assumed a position on the other side. The proposal was to move the motor down the skids and onto the dock by having Mr. Hill "walk it down." Plaintiff was to help if there was anything he could do.

8. Just as plaintiff had gotten into position and had placed his hands on the motor, it "all of a sudden" began to move and pushed him off the dock, causing the injuries of which he complains. He has no explanation for what caused the movement of the motor. Mr. Hill was on the other side with his back toward plaintiff and against the crate.

9. Plaintiff knew "this is a way that freight is off-loaded," and had seen freight unloaded in this manner on six or seven occasions. He believed this was a safe manner in which to unload freight, and that the manner in which they were unloading the motor was not "unsafe in any manner."

Insofar as plaintiff's testimony is concerned, it is apparent Mr. Hill was more experienced and skilled than plaintiff in the unloading of freight in the manner used, and that Mr. Hill was directing the operation. However, it is equally apparent that the motor and the unloading thereof was not under the exclusive control and management of defendant, but that plaintiff, as noted in the majority opinion of the Court of Appeals, had the contractual right of control over the motor, and participated in the control and unloading thereof. What caused the motor to begin moving is apparently unknown, but knowledge as to this cause, whatever it may have been, was no more accessible to Mr. Hill than it was to plaintiff. And certainly, due to their positions, knowledge as to the cause of the movement and plaintiff's fall, which resulted in his injury, was neither accessible to Mr. Hill nor inaccessible to plaintiff.

The mere fact that an unexplained accident occurs, or an injury is sustained, is not sufficient from which to infer negligence. Gray v. E. J. Longyear Company, supra; Williamson v. Piggly-Wiggly Shop Rite Foods, Inc., 80 N.M. 591, 458 P.2d 843 (Ct.App.1969); Lovato v. Plateau, Inc., 79 N.M. 428, 444 P.2d 613 (Ct.App.1968).

From a consideration of the reasons for the doctrine of res ipsa loquitur and the matters which a plaintiff must prove before the finder of fact can infer negligence on the part of the defendant under this doctrine, as expressly required by the tendered instruction and the New Mexico law, we fail to understand how the majority of the Court of Appeals can say the plaintiff was entitled to have his tendered instruction given to the jury. Certainly nothing said in our opinion in Chevron Oil Company v. Sutton, 85 N.M. 679, 515 P.2d 1283 (1973), supports the proposition, for which the Court of Appeals cites it, that "any control exercised by plaintiff was superseded by Hill's assumption of control over the operation." That case concerns summary judgment, master and servant and respondeat superior, and not res ipsa loquitur. As is shown above, in order to bring himself within the res ipsa loquitur doctrine, he must have shown not only "control" by Hill, but "exclusive con-

trol" by him. The majority of the Court of Appeals relied upon Vogt v. Hotard, 144 So.2d 714 (La.App.1962); Parlow v. Carson-Union-May-Stern Company, 310 S.W. 2d 877 (Mo.1958), and Powell v. Moore, 228 Ore. 255, 364 P.2d 1094 (1961), as support for their position "that where the defendant is directing and managing the construction and use of an instrumentality, the jury may find him to be in exclusive control despite the incidental aid of the plaintiff." These cases are in no way declaratory of the New Mexico law, are not inconsistent with the result we reach under the particular facts of this case, and do not support the Court of Appeals.

In the case of Vogt v. Hotard, supra, the plaintiff did allege in his petition "that defendant Hotard had complete and exclusive charge, control and supervision over the arrangement and rigging of the ropes and the felling operation." But, in announcing the rule by which the doctrine of res ipsa loquitur is applied in Louisiana, the court stated at 144 So.2d 716:

> "In Louisiana the rule by which said doctrine is applied is more rigorous in the requirement that plaintiff is at a decided disadvantage by lack of evidence or knowledge as to causation, and that the instrumentalities which are involved are under the control and within the exclusive knowledge of defendant as to their suitability and use. * * *"

The Louisiana law applied by the court in the Vogt case required only "control" and not "exclusive control" of the instrumentalities involved. Also, the Louisiana court required under the law of that case, and so found, that the instrumentalities involved were "within the exclusive knowledge of the defendant as to their suitability and use." Clearly, in the present case, the plaintiff had some knowledge as to the suitability and use of the instrumentalities used in unloading the motor. By his own admission, he had observed such an unloading operation on six or seven occasions and knew this was a way in which freight is off-loaded.

We also observe that in the Vogt case the defendant was driving his automobile which pulled the tree over and caused it to fall on plaintiff. In this regard and as to the cause of the accident resulting in Vogt's injuries, the Louisiana court stated at 144 So.2d 718: "If defendant Hotard had not gunned and rapidly jerked the car forward the accident probably would not have happened."

In the present case, we have not the slightest suggestion of any act on the part of Hill which caused the movement of the crated motor on the skids. The cause of its movement could just as easily be attributed to plaintiff or to other causes as to Hill. Plaintiff testified the motor was sitting in a stable position on the skids, he was touching and facing it at the moment it moved, and he does not know what caused the movement.

In the case of Parlow v. Carson-Union-May-Stern Company, supra, a scaffold belonging to and assembled by defendant collapsed while plaintiff was working on it. Plaintiff had held parts for defendant's porter as the scaffold was being assembled, but he did not observe the manner in which it was assembled, since he assumed the porter knew what he was doing. Plaintiff had worked on the scaffold for several minutes before it collapsed.

In reciting the elements of the doctrine of res ipsa loquitur, the Missouri court used the following language:

> "The doctrine of res ipsa loquitur applies only 'when (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence.'" 310 S.W.2d at 881.

It also stated as to control that it " '* * * does not mean physical control, but refers to the right of such control * * *.' "

The difference between this definition and stated elements and the New Mexico definition and required elements are immediately apparent. In Missouri "exclusive control" is not required; control means right of control and not actual physical control; and the defendant must possess superior knowledge or means of acquiring information as to the cause of the occurrence. Even assuming the applicability of Missouri law to our case, we would reach the same conclusion we do under New Mexico law. In our case the right of control over the motor, until it was unloaded, was in plaintiff as the agent of his employer. The defendant had no more knowledge and no better means of acquiring information as to the cause of the movement of the motor than did plaintiff. Both plaintiff and Hill observed and knew what was being done, both participated in the doing, and both were present when the crate moved on the skids. Neither was in a better position to know what caused the movement.

We do not share the view of the majority of the Court of Appeals that the facts in the case of Powell v. Moore, supra, are quite similar to those in the present case. Furthermore, the Oregon court in that case stated the crucial question to be decided on appeal was whether there was sufficient evidence of defendant's negligence to submit the issue of his negligence to the jury. The court concluded there was ample evidence upon which the jury could find a verdict against the defendant on the basis of his negligence. In the present case the question of defendant's negligence was submitted to the jury, and the jury resolved this issue in favor of defendant.

The majority of the Court of Appeals quoted at some length from the opinion in the Powell case. We shall not repeat these quotations, but it is apparent in those portions relating to who was in charge of operations and in control of the inspection and use of the ramp, which was the instrumentality causing the injury in that case, that "exclusive control" was not required, as is required under New Mexico law and under the requested instruction submitted by plaintiff in the case before us.

We need not and do not comment upon the other issues resolved by the majority of the Court of Appeals in reaching its decision to reverse the judgment in favor of defendant. However, our failure to comment thereon is not to be construed as our approval of either the reasoning advanced or the results reached in resolving these issues.

The decision of the Court of Appeals in holding that the district court erred in failing to instruct on the doctrine of res ipsa loquitur should be reversed and the judgment of the district court affirmed.

It is so ordered.

McMANUS, C. J., and STEPHENSON, MONTOYA and MARTINEZ, JJ., concur.