827 P.2d 847

**Mary Ann MIRELES, Plaintiff–
Appellant,**

v.

**Thomas BRODERICK, M.D.,
Defendant–Appellee.**

**No. 11054.**

Court of Appeals of New Mexico.

Jan. 29, 1992.

Certiorari Granted Feb. 27, 1992.

William S. Ferguson, Ferguson & Lind,
P.C., Albuquerque, for plaintiff-appellant.

Bruce D. Hall, Rodey, Dickason, Sloan,
Akin & Robb, P.A., Albuquerque, for de-
fendant-appellee.

## OPINION

HARTZ, Judge.

The Plaintiff, Mary Ann Mireles, appeals
from an adverse verdict in a medical mal-
practice case. She contends that the dis-
trict court committed reversible error by
refusing to give the jury her tendered in-
struction on res ipsa loquitur. The Defen-
dant, Dr. Thomas Broderick, argues that
(1) the doctrine of res ipsa loquitur was
inapplicable because (a) a claim under res
ipsa loquitur should not be based, as it was
here, on expert testimony, (b) Plaintiff also
relied upon a specific theory of how the
accident occurred, and (c) Plaintiff did not
establish the exclusive control by Defen-
dant that is a necessary predicate for appli-
cation of res ipsa loquitur; (2) the res ipsa
loquitur instruction tendered by Plaintiff
was incorrect; and (3) if failure to give the
tendered instruction to the jury was error,
the error was harmless. We affirm on the
second ground; the instruction tendered by
Plaintiff was not a proper res ipsa loquitur
instruction and therefore the district court

had no duty to give the instruction. We need not address Defendant's other contentions.

## I. Introduction

For the purpose of deciding this appeal we need provide only a brief summary of the evidence at trial. We view the evidence in the light most favorable to Plaintiff's res ipsa loquitur theory, because the district court should reject an otherwise proper instruction only if there is insufficient evidence to support the factual predicate of the instruction. *See Thompson Drilling v. Romig,* 105 N.M. 701, 704–05, 736 P.2d 979, 982–83 (1987).

Defendant served as the anesthesiologist when a bilateral mastectomy was performed on Plaintiff. Sometime after the surgery (the parties disputed how soon after surgery) Plaintiff developed symptoms that were subsequently diagnosed as ulnar neuropathy, which caused the degeneration of the fourth and fifth fingers of her right hand. Plaintiff's expert witness, Dr. Randall Waring, testified that the ulnar nerve, which passes by the elbow, can be injured during surgery if it is subjected to excessive stretching or compression that compromises the blood supply to the nerve. Therefore, he testified, an anesthesiologist should properly position and cushion the arm to avoid such pressure and should monitor the arm during surgery to be sure that proper positioning and cushioning is maintained. He described in detail the proper positioning and cushioning and the monitoring that should be conducted. (For ease of reference, we shall use the term "Waring protective procedures" to label the positioning, cushioning, and monitoring described by Dr. Waring.) He also testified that the injury to Plaintiff's ulnar nerve must have occurred during the surgery and that such an injury to the nerve cannot occur during surgery unless the anesthesiologist fails to follow Waring protective procedures. Such a failure, in his view, constitutes negligent care. In re-

sponse, Defendant put on evidence that he had properly positioned and cushioned Plaintiff's arm during surgery, the injury could have occurred while Plaintiff was sedated by heavy pain medication after surgery, and injury to the ulnar nerve can appear after surgery despite the exercise of proper care by those performing the surgery.

Plaintiff tendered the following instruction:

In support of her claim that Dr. Broderick was negligent, Plaintiff relies in part upon the doctrine of "res ipsa loquitor [sic]" which is a Latin phrase and means "the thing speaks for itself". To rely on this doctrine, Plaintiff has the burden of proving each of the following propositions:

1. That the injury to Plaintiff was proximately caused by inadequate protection of Plaintiff's extremities during anesthesia while her condition was under the exclusive control and management of Dr. Broderick.

2. That injury to Plaintiff was of the kind which does not ordinarily occur in the absence of negligence on the part of the person in control.

If you find that Plaintiff proved each of these propositions, then you may, but are not required to, infer that Dr. Broderick was negligent and that the injury or damage proximately resulted from such negligence.

If, on the other hand, you find that either one of these propositions has not been proved or, if you find, notwithstanding the proof of these propositions, that Dr. Broderick used ordinary care for the safety of others in his control and management of the Plaintiff, then the doctrine of res ipsa loquitor [sic] would not support a finding of negligence.

Most of the language of the instruction is taken from our uniform jury instruction on res ipsa loquitur, SCRA 1986, 13–1623.[1]

■ The district court dismissed Plaintiff's res ipsa loquitur claim and reject-

---

1. Although this court is restricted in finding fault with uniform jury instructions, *see State v. Jennings,* 102 N.M. 89, 93, 691 P.2d 882, 886 (Ct.App.1984), we note the potentially mislead-

ing language: "does not ordinarily occur in the absence of negligence." The language may improperly suggest that the jury can infer negligence if the injury rarely occurs when a person

the tendered instruction on the ground that Plaintiff had failed to establish the requisite "exclusive control and management of Dr. Broderick." The district court made the observation that the injury could have occurred after surgery as well as during surgery. The district court also noted that there was evidence that the injury suffered by Plaintiff does occur in the absence of negligence. *See Schmidt v. St. Joseph's Hosp.*, 105 N.M. 681, 684, 736 P.2d 135, 138 (Ct.App.1987) (in medical malpractice claim that ulnar neuropathy was caused by surgery, plaintiff's admission that the injury was "of a kind which can occur in the absence of negligence on the part of any person" is fatal to patient's res ipsa loquitur claim). We need not rest affirmance on the grounds expressed by the district court, however, because we can affirm if the district court was correct for any reason. *See Naranjo v. Paull*, 111 N.M. 165, 170, 803 P.2d 254, 259 (Ct.App.1990).

As already noted, we base our affirmance on the conclusion that the tendered instruction is not a proper res ipsa instruction. *See* SCRA 1986, 1–051(I) (correct instruction must be tendered to preserve error in failure to instruct on a point of law). The analysis below will establish that the sole purpose of a res ipsa instruction is to inform the jury that it is permitted to draw a certain type of inference—an inference that might otherwise be considered improperly speculative. The tendered instruction, however, does not serve that function. Although it is labelled a res ipsa instruction and contains much language that belongs in a true res ipsa instruction, the tendered instruction at best states a pedestrian proposition for which no special instruction is necessary. It was therefore properly rejected.

II. Purpose of the Doctrine of Res Ipsa Loquitur

The doctrine of res ipsa loquitur has performed various functions. *See generally*

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 40 (5th ed. 1984). In some jurisdictions it creates a presumption or shifts the burden of proof. *See Restatement (Second) of Torts* § 328D cmt. m (1965). It has also served as a way station in the development of the substantive law, such as the law of common carriers, *see* William L. Prosser, *Res Ipsa Loquitur in California*, 37 Cal.L.Rev. 183, 185–89 (1949), and the law of strict liability, *see* Louis L. Jaffe, *Res Ipsa Loquitur Vindicated*, 1 Buff.L.Rev. 1, 12–13 (1951) [hereinafter Jaffe] (commenting on *Escola v. Coca Cola Bottling Co.*, 24 Cal.2d 453, 150 P.2d 436 (1944), in which the majority rested liability of the manufacturer of an exploding bottle on res ipsa loquitur, while Justice Traynor concurred on an absolute liability theory). In New Mexico, however, res ipsa loquitur is simply "a rule of evidence." *Strong v. Shaw*, 96 N.M. 281, 283, 629 P.2d 784, 786 (Ct.App.1980). As stated by the reporter to the *Restatement (Second) of Torts*, "A res ipsa loquitur case is ordinarily merely one kind of case of circumstantial evidence, in which the jury may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it." *Restatement (Second) of Torts* § 328D cmt. b at 157. *See Tipton v. Texaco, Inc.*, 103 N.M. 689, 697, 712 P.2d 1351, 1359 (1985).

■ If the doctrine of res ipsa loquitur accomplishes no more than to authorize the fact-finder to draw an appropriate inference from circumstantial evidence, one may question the utility of continuing to refer to the doctrine. In particular, why should the jury be instructed on the doctrine? As a general rule, when a party rests a claim on circumstantial evidence, the only instruction given is the uniform jury instruction on circumstantial evidence:

A fact may be proved by circumstantial evidence. Circumstantial evidence

in the position of the defendant is careful. If the language is so interpreted, doctors could be found liable whenever a rare complication occurs. *See Brannon v. Wood*, 251 Or. 349, 444 P.2d 558, 562 (1968) (en banc) ("The test is not whether a particular injury rarely occurs, but rather, when it occurs, is it ordinarily the result of negligence."); David Kaye, *Probability Theory Meets Res Ipsa Loquitur*, 77 Mich.L.Rev. 1456 (1979).

consists of proof of facts or circumstances which give rise to a reasonable inference of the truth of the fact sought to be proved.

SCRA 1986, 13–308. A party relying on circumstantial evidence ordinarily is not entitled to an instruction specifically describing the chain of inference upon which the party relies. For example, the uniform jury instructions say that failure of a party to produce evidence, SCRA 1986, 13–2104, failure of a party to testify, SCRA 1986, 13–2105, and a party's flight from the scene of an accident, SCRA 1986, 13–2106, are not to be the subjects of jury instructions. Although instructions permitting the jury to draw inferences from such acts or omissions would correctly state the law, these are matters for argument to the jury by counsel. The approach taken in our uniform jury instructions is to keep the court out of disputes concerning the inferences that may be drawn from the evidence. Such matters are left to the skills of counsel. Why, then, should a party be entitled to a res ipsa instruction which serves only to spell out the desired chain of inference? We note that there is apparently only one reported New Mexico decision in which a judgment was reversed because of failure to give a res ipsa instruction. *Tuso v. Markey*, 61 N.M. 77, 294 P.2d 1102 (1956) (chair collapsed when restaurant patron sat on it).

■ Perhaps the best explanation for having a res ipsa instruction is that it rebuts the view that the expressed inference is too speculative to be permissible. After all, one of our uniform jury instructions tells the jury: "Your verdict should not be based on speculation, guess or conjecture." SCRA 1986, 13–2005. Professor Jaffe has suggested that the chief, perhaps sole, virtue of the doctrine of res ipsa loquitur is that, for sound policy reasons, it permits an inference that under customary standards would be considered too speculative to support a verdict. He observed:

Liability—in the traditional view—is not based on the "balance of probabilities" but on a finding of the fact. I am perfectly aware that abstract probability may play a role in finding a fact, but what is referred to in the traditional formula is the greater probability in the case at hand. The "probabilities" in the abstract or statistical sense is only a datum. The jury's quest for the fact can only be undertaken if there is evidence in addition to that upon which the mere abstraction is based which will enable the jury to make a reasoned choice between the competing possibilities. The conditions for a finding are not satisfied merely by showing a greater statistical probability. If all that can be said is that there are 55 chances of negligence out of 100, that is not enough. There must be a *rational*, i.e., evidentiary basis on which the jury can choose the competing probabilities. If there is not, the finding will be based (in the words of the formula) on mere speculation and conjecture.

Jaffe, *supra*, at 3–4. He then contended:

The doctrine of *res ipsa does* rest on probability. It takes a case to the jury where the degree of probability is indeterminate and there is not sufficient evidence to apply it to the case at hand.... What justification can there be for putting to a jury a case in which a "rational" finding of liability cannot be made? The reason is two-fold. Our experience and understanding of such situations indicates a substantial, if indeterminate, probability of negligence. In short, there is a substantial probability that the plaintiff may have a cause of action. Now ordinarily that fact alone would not warrant a judgment against the defendant. But typically, if not invariably, in this class of case the defendant has greater access to the facts than the plaintiff. This is the significance of the usual requirement for *res ipsa* that the defendant be in control of the mischief-working instrumentality. *Res ipsa* rests on the notion that it is fair to treat the probability as the fact if the defendant has the power to rebut the inference. (Footnote omitted.)

*Id.* at 6. And he concluded:

There is in my opinion a legitimate place for a doctrine of *res ipsa* which operates in the absence of a less than adequate

inference where the defendant is typically in control of the key facts. (Footnote omitted.)

*Id.* at 7.

We need not agree fully with Professor Jaffe concerning when it is appropriate to apply res ipsa loquitur. The purpose of quoting his analysis at length is just to point out that a res ipsa instruction can serve to give the jury a green light to cross what we shall call the "res ipsa bridge" from the predicate facts to what might otherwise be considered a too-speculative conclusion regarding the probable causes of the injury. We see no other purpose for the doctrine under New Mexico law.

In particular, we note that the doctrine serves no role in determining whether specific conduct is negligent. The jury determines whether specific conduct is beneath the standard of care by looking to its own view of what can be expected of a reasonable person or, in appropriate cases, by relying on an expert's opinion regarding the standard of care for someone with special skills or responsibilities. The fact that conduct resulted in an accident is, of course, irrelevant to determining whether the conduct was negligent. When the doctrine of res ipsa loquitur permits an inference of negligence from the occurrence of an accident, it is not establishing a standard of care. It is simply saying that one can infer from the accident that the most likely causes are causes involving negligence of the defendant. The circumstantial inference is from the accident to the likelihood of the various possible causes. The jury then factors in its own view of which possible causes would involve negligence, a process that relies upon no inferences from the fact of the injury. Whether the jury draws the res ipsa inference of negligence is determined by the jury's view of (1) which possible causes would involve negligence and (2) which possible causes are most likely.

## III. Application to This Case

■ At trial, Plaintiff's counsel asked what he called at the time "my res ipsa question":

Q. * * * Assuming that it was proven to your satisfaction that the injury occurred during surgery, that the ulnar nerve injury occurred during surgery, is an ulnar nerve injury, in a healthy patient, the kind of injury that normally occurs in the absence of a failure of care by the anesthesiologist?

Dr. Waring responded:

A. I believe the answer is no * * *. My feeling is that if I exercised due diligence in positioning and padding the patient, that I will not have a nerve injury.

We assume, without deciding, that this testimony would support application of the doctrine of res ipsa loquitur to permit drawing an inference of the probable cause of the injury from the mere fact that the injury occurred. Dr. Waring's answer tells the jury that it can cross the res ipsa bridge from (a) the occurrence of the injury during surgery to (b) the inference that the cause of the injury was negligent care, even in the absence of any direct evidence of what care was provided during surgery.

Dr. Waring's testimony contained two components necessary for an inference of liability. First, he provided an expert opinion on causation—why the ulnar nerve injury occurred. He testified that the injury could occur during surgery only if Defendant did not follow the Waring protective procedures. Second, he provided an expert opinion on standard of care. He testified that failure to follow those procedures constitutes professional negligence. Thus, only with Dr. Waring's assistance could the jury infer (1) the likely causes of the ulnar nerve injury and (2) that those causes involved negligence by Defendant. The first inference—which is derived from the occurrence of the injury during surgery—is a res ipsa-type inference. The testimony would permit the jury to cross a res ipsa bridge from the fact of the ulnar nerve injury to the inference of the likely causes of the injury. The second inference—regarding the standard of care—is not predicated on the occurrence of the injury and involves no circumstantial inference whatsoever.

The instruction submitted by Plaintiff, however, does not track Dr. Waring's answer to the "res ipsa question." The pertinent portion of the tendered instruction reads:

> To rely on [the res ipsa] doctrine, Plaintiff has the burden of proving each of the following propositions:
>
> 1. That the injury to Plaintiff was proximately caused by inadequate protection of Plaintiff's extremities during anesthesia while her condition was under the exclusive control and management of Dr. Broderick.
>
> 2. That injury to Plaintiff was of the kind which does not ordinarily occur in the absence of negligence on the part of the person in control.

Although there may be some ambiguity in the meaning of "inadequate protection of Plaintiff's extremities" in the first proposition, the most natural interpretation in the context of this trial derives from Dr. Waring's testimony. He testified at length concerning the proper methods of protecting the extremities of an anesthetized patient by positioning, padding, and monitoring. He repeatedly made clear his opinion that Plaintiff's injury could have occurred during surgery only if there had been a failure to employ those methods. Consequently, "inadequate protection of Plaintiff's extremities" would likely be construed by the jury to mean failure to employ the Waring protective procedures,[2] and the heart of the first proposition is simply that Plaintiff's injury was caused by failure to follow those procedures. (For present purposes we ignore any concerns that may arise from the language in the first proposition that Plaintiff's "condition" was under the exclusive control and management of Defendant. Clearly the surgeon, as opposed to Defendant, had ultimate control over many aspects of Plaintiff's "condition" during surgery. We will assume "condition" refers only to Plaintiff's extremities, although the language is sufficiently indefinite that the instruction might be properly rejected on that ground alone.)

The core problem with the tendered instruction is that the first proposition begins after the jury has crossed the res ipsa bridge constructed by Dr. Waring. The proposition assumes that the jury has already inferred from the occurrence of the injury during anesthesia that the injury was caused by failure to follow Waring protective procedures. But once the jury finds that the injury was caused by failure to follow Waring protective procedures, the step from that finding to a determination of negligence does not involve any res ipsa inference. The only element needed to take that step is the finding that failure to follow Waring protective procedures constitutes negligence. That finding would not even be based on circumstantial evidence; it would be based on direct testimony by an expert witness, Dr. Waring, regarding the standard of care.

Not only is a res ipsa inference not necessary to travel from the first proposition to a determination of negligence, but also a res ipsa inference cannot provide the transportation because, as we have already pointed out, the doctrine of res ipsa loquitur cannot supply the element of the standard of care. One cannot infer the standard of care from the occurrence of an accident.

In sum, once the jury finds the first proposition (that the injury was caused by failure to employ Waring protective procedures), (1) the jury does not need a res ipsa inference to find liability, and (2) res ipsa loquitur cannot supply the link (standard of care) from the first proposition to liability. In other words, once the jury has found the first proposition, res ipsa loquitur has no role to play in the determination of liability. On this ground alone, the tendered instruction, which assumes that the jury has already found the first proposition, should have been rejected.

Proposition two in the tendered instruction—"[t]hat injury to Plaintiff was of the kind which does not ordinarily occur in the

---

2. Even if Plaintiff did not intend the words "inadequate protection" to have this meaning, it is proper to refuse the instruction if it could naturally be interpreted to have a meaning that would make the instruction improper.

absence of negligence on the part of the person in control"—looks like res ipsa language but it cannot save the instruction. Unless it is read as superseding the first proposition (which would make the instruction hopelessly confusing), the second proposition must mean that the specific event described in the first proposition—"inadequate protection of Plaintiff's extremities during anesthesia"—does not ordinarily occur in the absence of negligence. That proposition, however, is in essence a statement of the standard of care, which is established by expert testimony, not through a res ipsa inference.

Thus, the tendered instruction does not inform the jury that it is permissible to cross the res ipsa bridge from the predicate (the occurrence of the ulnar nerve injury during surgery) to the conclusion (negligent care of Plaintiff's extremities). Construed to be meaningful, it says that the jury can hold Defendant liable if it finds that Plaintiff's extremities were not adequately protected during anesthesia, Defendant had exclusive control of Plaintiff's extremities, and it is negligence not to adequately protect the extremities during anesthesia. The instruction, as so construed, may accurately state the law, but it is not a res ipsa instruction. There was no need for an instruction to tell the jury that it could infer negligence from (1) the first proposition of the tendered instruction and (2) Dr. Waring's testimony concerning the standard of care.

Nothing we say here is inconsistent with *Harless v. Ewing*, 81 N.M. 541, 469 P.2d 520 (Ct.App.1970). That opinion did not discuss the instruction used at the trial of that case. It merely held that the doctrine of res ipsa loquitur would permit the jury to infer from (1) the fact that the wheel came off the truck, that (2) the defendant had been negligent in maintenance of the truck. Such an inference is a proper res ipsa inference. The analogue in our case to the res ipsa theory in *Harless* would be an inference from (1) the occurrence of Plaintiff's ulnar nerve injury during anesthesia, that (2) Defendant had been negligent in protecting Plaintiff's arm. That,

however, was not the theory stated in Plaintiff's tendered instruction.

■ Having been rather harsh in our criticism of the tendered instruction, we should note that there are extenuating circumstances that may explain the errors. The errors undoubtedly were the result of efforts by Plaintiff's counsel to force his res ipsa theory into the format of the uniform jury instruction on res ipsa loquitur. The uniform instruction, however, was not written with the present context in mind. Indeed, still open in New Mexico is the question of when, if ever, res ipsa is applicable in a medical malpractice case. Certainly, as pointed out in our first footnote, the language of the instruction stating that the injury "was of a kind which does not ordinarily occur in the absence of negligence" seems inappropriate in the medical malpractice context when experts recognize the occurrence of rare but unavoidable complications; the uniform instruction would need to be revamped if res ipsa doctrine were to be used in medical malpractice cases. *Cf.* SCRA 1986, 13–1118 (no instruction drafted for res ipsa loquitur in medical malpractice cases); 1 Cal.Jury Inst.Civ. 6.35, 6.36 (7th ed. 1986) (California res ipsa loquitur instructions for medical malpractice).

In its most recent decision on res ipsa loquitur, our supreme court stated that a res ipsa instruction should not have been given because the inferences arising from the doctrine, given the evidence of negligence, were "unnecessary crutches to reach the issues of negligence." *Tipton v. Texaco, Inc.*, 103 N.M. at 698, 712 P.2d at 1360. Here, perhaps a true res ipsa instruction would have been appropriate, but the instruction tendered by Plaintiff was, at best, an "unnecessary crutch" that set forth an obvious proposition for which no additional instruction was necessary. *See Kirk Co. v. Ashcraft*, 101 N.M. 462, 466, 684 P.2d 1127, 1131 (1984) ("It is not error to deny requested instructions when the instructions given adequately cover the law to be applied."); *State ex rel. State Highway Dep't v. Strosnider*, 106 N.M. 608, 612, 747 P.2d 254, 258 (Ct.App.1987) ("It is

not error to refuse instructions that are incomplete, erroneous or repetitious.").

Because the district court did not err in denying Plaintiff's request to give the tendered instruction, we affirm the judgment below.

IT IS SO ORDERED.

BIVINS, Judge (concurs).

PICKARD, Judge (dissents).

BIVINS, Judge (concurring).

I concur in both the discussion and the result of Judge Hartz' opinion, and write separately only to briefly comment on Judge Pickard's dissent.

Prefatory to those comments, I think it useful to restate why Plaintiff's tendered instruction on res ipsa loquitur is incorrect. A party is entitled to an instruction on his or her theory of the case if there is evidence to support that theory. *State ex rel. State Highway Dep't v. Strosnider,* 106 N.M. 608, 611–12, 747 P.2d 254, 257–58 (Ct.App.1987). The right to an instruction, however, is not absolute; the party must tender a correct instruction. *Dessauer v. Memorial Gen. Hosp.,* 96 N.M. 92, 99, 628 P.2d 337, 344 (Ct.App.1981). In this case, the majority has assumed, without deciding, that the facts would support the giving of a proper res ipsa loquitur instruction; nevertheless, we have concluded that Plaintiff did not submit a proper instruction.

The directions for use for SCRA 1986, 13–1623 (the res ipsa loquitur uniform jury instruction) state "[t]he names of the various individuals and *the name or description of the instrumentality or occurrence* should be inserted in the appropriate blanks." (emphasis added). Instead of inserting in the blank a description of the occurrence, such as "operation for bilateral mastectomy" or similar wording, Plaintiff chose to describe her injury or damage as proximately caused by "inadequate protection of Plaintiff's extremities." Inadequate protection of her extremities was not the occurrence that would have justified giving a res ipsa loquitur instruction; rather, inadequate protection is a term that describes the specific acts of negligence Plaintiff relied on to prove Defendant negligent.

This misdescription is made clear when one examines the issues instruction given to the jury. The district court instructed the jury that in order to establish medical malpractice on the part of Defendant, Plaintiff had the burden of proving that at least one of the following occurred during surgery:

1.  The defendant failed to properly position plaintiff's right arm; or

2.  The defendant failed to properly pad plaintiff's right arm, or

3.  The defendant failed to properly observe that plaintiff's right arm had become mispositioned on the arm board.

The three specific acts of negligence can reasonably be interpreted as asserting that Defendant failed to adequately protect Plaintiff's extremities.

Had Plaintiff's tendered instruction been given, the jury would have been told in the issues instruction that in order to find Defendant negligent, it must find one of the three specific claimed acts by Defendant, and then later told in the res ipsa loquitur instruction that it could infer Defendant was negligent if it found "inadequate protection of Plaintiff's extremities." When the issues instruction and the tendered res ipsa loquitur instruction are examined together, it is easy to see why the district court did not err in refusing to give Plaintiff's res ipsa loquitur instruction in the form tendered. The jury would have been instructed to infer negligence based on the very same acts which the court instructed Plaintiff must establish in order to prove negligence. This is not only confusing, but incorrect.

The dissent suggests that the tendered instruction did nothing more than instruct the jury on Plaintiff's theory of the case with reference to the specific negligence that Plaintiff attempted unsuccessfully to prove. I disagree. The tendered instruction did much more. It attempted to mix the two theories. This could only cause confusion since res ipsa loquitur is not premised on specific acts of negligence.

Furthermore, I disagree with the dissent that the fault in the instruction is that it is too specific in its description of the occurrence causing the injury. The fault lies not in specificity, but rather in the failure to describe the occurrence at all. The defective language refers to the specific acts of negligence and thus negates the need for res ipsa loquitur which is based on an inference.

Nor does the majority necessarily find fault with the res ipsa loquitur uniform jury instruction in the manner indicated by the dissent. Although the majority does comment that the language of the instruction may be misleading, the fault found with the tendered instruction is not with language found in the uniform jury instruction but with language added by Plaintiff. The dissent contends that it was appropriate for Plaintiff to have filled in the blank with the description of what her expert said caused her injury. This misses the point. Plaintiff's expert, Dr. Waring, referred to what we have called the "Waring protective procedures" which were and should have been incorporated in the issues instruction for proof of specific acts of negligence, not in the res ipsa loquitur instruction.

Finally, the dissent argues that it is not possible to read the first element of Plaintiff's requested res ipsa loquitur instruction as requiring the jury to find all the elements of a specific type of negligence. Perhaps not, if read in isolation; however, when read in conjunction with the issues instruction, that is the only reasonable interpretation. This interpretation is made clear when one considers the purpose of res ipsa loquitur. Judge Hartz, writing for the majority, has adequately discussed the purpose; however, the examination of a typical res ipsa loquitur case demonstrates the point. In *Pillars v. R.J. Reynolds Tobacco Co.*, 117 Miss. 490, 78 So. 365, 366 (1918), the court applied the following logic when res ipsa loquitur was argued in the case involving contaminated chewing tobacco: "We can imagine no reason why, with ordinary care, human toes could not be left out of chewing tobacco, and if toes are found in chewing tobacco, it seems to us that somebody has been very careless."

In *Pillars*, a proper res ipsa loquitur instruction would likely have called for insertion of language such as "damage to plaintiff was proximately caused by the presence of foreign matter in chewing tobacco the packaging of which is under the exclusive control and management of defendant." Had the plaintiff in that case inserted instead that the injury was proximately caused by "inadequate quality control" there would have been nothing for the jury to infer.

In sum, res ipsa loquitur is appropriate when the injured party encounters difficulty in proving how the injury occurred. When the injury results from an occurrence that does not ordinarily happen in the absence of negligence on the part of the person in control, i.e., a toe in chewing tobacco or, perhaps, ulnar neuropathy following a surgical procedure, the jury may infer negligence. It does not, however, infer negligence from the proof of acts of negligence. Here, Plaintiff wanted the court to tell the jury that the act of negligence, "inadequate protection of Plaintiff's extremities during anesthesia," does not ordinarily occur in the absence of negligence. I agree the court properly refused to do so.

PICKARD, Judge (Dissenting).

The crux of the majority's opinion is that plaintiff's tendered instruction was not a res ipsa instruction because the first element begins after the res ipsa bridge is crossed, and therefore the instruction is nothing more than a dressed-up negligence instruction, an "unnecessary crutch" to reach the issue of negligence. I cannot agree with the majority's formulation because (1) as I understand res ipsa loquitur, it is merely one form of circumstantial evidence; (2) as a form of circumstantial evidence, a plaintiff is permitted to rely on res ipsa loquitur although he or she attempts to prove, and may be successful at proving, specific negligence; (3) the tendered instruction did nothing more than instruct the jury on plaintiff's theory of the case

with reference to the specific negligence that plaintiff attempted, obviously unsuccessfully, to prove; (4) the formulation of the instruction was invited by the format of SCRA 1986, 13–1623; and (5) the majority opinion appears to read plaintiff's requested instruction in an unnecessarily technical fashion.

When res ipsa loquitur applies to a case, it is as one form of circumstantial evidence. *Schmidt v. St. Joseph's Hosp.,* 105 N.M. 681, 683, 736 P.2d 135, 137 (Ct.App.1987). Res ipsa loquitur requires plaintiff to establish that (1) the instrumentality causing the injury is in defendants' exclusive control, and (2) the injury is of a kind that does not ordinarily occur in the absence of negligence. *Id.;* UJI Civ. 13–1623. If the predicate facts are established, the jury can infer both negligence (duty and breach, *see Restatement (Second) of Torts* § 328A (1979)) and causation, *see id.* § 328D cmt. b at 157.

The majority finds fault with plaintiff's rendition of the first element of the uniform jury instruction. The fault appears to be that it is too specific in its description of the instrumentality causing injury. I do not believe that including a specific description in the res ipsa instruction turns the instruction into a "pedestrian proposition for which no special instruction is necessary." Nor do I agree with defendant's argument that plaintiff's use of the words "inadequate protection" violates the UJI directions requiring plaintiff to describe the "instrumentality" causing her harm in the instruction. The uniform jury instruction requires plaintiff to name the "instrumentality or occurrence" that "proximately caused" her injury. UJI Civ. 13–1623. For plaintiff to have filled in the blank with a description of what her expert said caused her injury seems, to me, to be appropriate. In any event, I do not believe that this court can say it is inappropriate in light of the rule prohibiting us from finding fault in uniform jury instructions. *See State v. Jennings,* 102 N.M. 89, 691 P.2d 882 (Ct. App.1984).

In my view, under the specific facts of this case, the only way plaintiff's res ipsa instruction would be so poorly drafted as to justify denial would be if the first element encompassed all facts necessary to establish liability under a negligence theory. There is a line of cases, including *Tuso v. Markey,* 61 N.M. 77, 294 P.2d 1102 (1956), and *Harless v. Ewing,* 81 N.M. 541, 469 P.2d 520 (Ct.App.1970), that stands for the proposition that the doctrine of res ipsa loquitur is not available to a plaintiff who proves specific acts of negligence. The key word here is "prove" because it is equally well-established by these cases that plaintiff can introduce evidence of specific acts of negligence without "waiving" the right to rely on res ipsa loquitur.

I would agree with the majority if the first element of the instruction required plaintiff to "prove" her case of specific negligence. If that were the case, then a jury's finding that plaintiff established the first element would negate her right to proceed on a res ipsa theory, according to *Tuso* and *Harless.* However, I do not believe it is possible to read the first element of plaintiff's requested instruction as requiring the jury to find all the elements of a specific type of negligence.

The first element of plaintiff's instruction requires the jury to find that plaintiff's injury was caused by "inadequate protection" of her extremities while her condition was under defendant's exclusive control. Plaintiff's expert established, though not without contradiction, that the only way plaintiff's neuropathy could have arisen would be from "inadequate protection": ulnar neuropathy is caused by failure of the blood supply to the nerve, which in this case is caused by pressure on the nerve due to compression or stretching; in the operating room, pressure is caused by inadequate protection.

Plaintiff's theory of the case instruction was considerably more specific as to what caused the inadequate protection. Plaintiff contended that defendant either (1) failed to properly position plaintiff's arm, (2) failed to properly pad it, or (3) failed to properly observe that it became mispositioned during the surgery. While all of these theories are variations of a failure to

protect the arm, they are analogous to the various methods in *Harless,* where negligence was shown in connection with why the wheels on a truck fell off. Yet, the plaintiff in *Harless* was entitled to an instruction on res ipsa loquitur.

My difference with the majority may be that I read "inadequate protection" as merely descriptive and not necessarily implying negligence, despite the use of the value-laden term "inadequate," and despite Dr. Waring's testimony that such inadequate protection is negligence. The majority's retort, then, is that the instruction is ambiguous and, when an instruction can be read in one of two ways, one of which is meaningful (mine) and one of which is nonsensical or tautological (theirs), then the trial court does not err in failing to give the instruction. I agree with the majority's premise that it is not error to fail to give an ambiguous instruction.

I disagree that their interpretation of the instruction is a natural one. I cannot see the necessity of several pages of explanation if the interpretation of the instruction is natural. It seems to me that the majority is reading the instruction in an unduly technical way and certainly not in the way that any lay jury would read it. I believe a lay jury would read the words "inadequate protection" as I do—as being merely descriptive of what happened to plaintiff during her anesthesia.

The function of res ipsa in this case is to permit the inference of both causation and negligence from the exclusive control of the instrumentality causing injury when the injury does not ordinarily occur in absence of negligence. Thus, here, the res ipsa instruction permits the jury to infer causation and negligence from defendant's exclusive control of the protection of plaintiff's extremities. The tendered instruction did inform the jury that it could draw this inference, and therefore it was a proper res ipsa instruction.

Nor do I believe that the requested instruction was an unnecessary crutch to reach the issue of negligence. An instruction on res ipsa loquitur counters other instructions and allows plaintiff's counsel to argue what is established by expert testimony in this case: that the mere happening of an accident like this is evidence of negligence. The following discussion also shows why failure to give the requested instruction was not harmless.

In ordinary negligence cases, the jury is instructed that the mere occurrence of an accident is not evidence that someone has been negligent. SCRA 1986, 13–1616. On the other hand, if the case is appropriate for a res ipsa instruction, then once the jury finds the predicate facts, it is almost entitled to conclude that the mere happening of the accident does show negligence. Thus, the res ipsa instruction allows plaintiff's counsel to explain to the jury, with approval from the judge, that the fact the accident happened can be evidence of negligence.

In medical malpractice cases, the equivalent of SCRA 1986, 13–1616 is SCRA 1986, 13–1112, telling the jury that doctors do not guarantee good results and the fact of a bad result is not evidence of negligence. In fact, defendant here closed his final argument by relying on this instruction. The res ipsa instruction would have allowed plaintiff to rebut this argument by relying on another instruction from the judge. That other instruction was plaintiff's tendered instruction, which would have allowed the jury to infer specific negligence from the fact that the injury was caused by an instrumentality in defendant's exclusive control (inadequate protection of plaintiff's arm) because plaintiff's expert testified that these injuries do not ordinarily occur in the absence of negligence on the part of the person in control. Instead, plaintiff was left to arguing that "bad result" cases involve only the organ on which the surgery was performed, thereby merely implying, without judicial approval, that it must be negligent to injure an arm when a patient is being operated on for a mastectomy.

In short, I believe that the majority has read plaintiff's instruction in a way that attempts to unfairly lock plaintiff into a specific negligence theory. Then, the majority has used this reading to hold that her

instruction was properly refused. I do not believe it is reasonable to read the instruction as the majority does. Thus, I do not believe that it is possible to read the instruction in one of two ways or that the instruction is ambiguous. I find that the instruction is meaningful as a more general res ipsa instruction and, accordingly, believe that the court erred in its failure to give it.

Because of this view, it is necessary for me to address issues the majority assumes without deciding: (1) whether res ipsa can be based on expert testimony, and (2) whether plaintiff established exclusive control. I believe the answer to both of these questions is "yes."

Defendant contends that allowing the doctrine of res ipsa loquitur to be used in medical malpractice cases, upon the introduction of expert testimony of the foundational propositions, is an expansion of the doctrine which the New Mexico Supreme Court would not make. I disagree. Application of the doctrine of res ipsa loquitur based on expert testimony to cases such as this one is solidly grounded in the decisions of several other jurisdictions. *E.g., Holloway v. Southern Baptist Hosp.,* 367 So.2d 871 (La.Ct.App.1978); *Parks v. Perry,* 68 N.C.App. 202, 314 S.E.2d 287 (1984); *Jones v. Harrisburg Polyclinic Hosp.,* 496 Pa. 465, 437 A.2d 1134 (1981). Comment d to the *Restatement (Second) of Torts* Section 328D specifically notes that the basis of the res ipsa loquitur inference can be expert testimony. The *Jones* case, relying on the *Restatement,* and recognizing that the " 'law must be responsive to new conditions and to the persuasion of superior reasoning[,]' " *Jones,* 437 A.2d at 1138 (quoting *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796, 806 (1964)), adopted the position that res ipsa loquitur may apply to medical malpractice cases when either common knowledge or medical evidence establishes that the event does not ordinarily occur without negligence. In light of recent supreme court opinions, *e.g., Bober v. New Mexico State Fair,* 111 N.M. 644, 808 P.2d 614 (1991) (expanding premises liability to harm caused outside the premises); *Collins v. Tabet,* 111 N.M. 391, 806 P.2d 40 (1991) (adopting a functional analysis in determination of scope of immunity for guardians ad litem); *Lovelace Medical Ctr. v. Mendez,* 111 N.M. 336, 805 P.2d 603 (1991) (permitting parents to recover costs of raising a healthy child born as consequence of failed tubal ligation); *Schmitz v. Smentowski,* 109 N.M. 386, 785 P.2d 726 (1990) (adopting prima facie tort), I have no doubt that our supreme court would readily adopt the *Restatement* position in this case.

Defendant contends that plaintiff has not established the requisite exclusive control for the doctrine of res ipsa loquitur to apply. Defendant relies on cases which state that the requisite control must be absolutely sole control. *E.g., Waterman v. Ciesielski,* 87 N.M. 25, 528 P.2d 884 (1974); *Begay v. Livingston,* 99 N.M. 359, 658 P.2d 434 (Ct.App.1981), *rev'd on other grounds,* 98 N.M. 712, 652 P.2d 734 (1982). I do not believe that either these cases or those others cited in the comment to UJI Civ. 13–1623 are applicable. *See State v. Scott,* 90 N.M. 256, 561 P.2d 1349 (Ct.App.1977) (court of appeals may consider whether supreme court precedent is applicable).

In the first place, for the reasons noted above in connection with my discussion of expert testimony, I believe the supreme court would adopt the *Restatement*'s view that exclusive control is but one way of proving the necessary responsibility on the part of the defendant for res ipsa to apply. *Restatement (Second) of Torts* § 328D cmt. g at 161–62. In the second place, the tenor of plaintiff's expert's testimony was that it was ultimately the responsibility of the anesthesiologist to insure that plaintiff's arm was properly padded and positioned, and that the padding and positioning was maintained despite the fact that others present at the operation may have accidentally moved the arm. The fact that this testimony may have been called into question by another doctor did not mean that plaintiff did not establish a factual basis for the giving of her requested instruction. *See Thompson Drilling, Inc. v. Romig,* 105 N.M. 701, 736 P.2d 979 (1987).

The simple fact of this case is that plaintiff proved facts entitling her to proceed to the jury on a res ipsa theory. She tendered an instruction conforming to the uniform jury instruction model. Because the instruction was not given, defendant had the unfair advantage of being allowed to argue to the jury, without judicially-sanctioned rebuttal from plaintiff, that the jury could not find negligence just because plaintiff was injured, although the sense of Dr. Waring's testimony and the function of res ipsa loquitur under the facts of this case were precisely to permit that inference of negligence.

Accordingly, I would reverse and remand for a new trial.