323 P.2d 292

Max O. MITTAG and Mrs. Max O. Mittag and Hoyt Welch, Administrator of the Estate of Dorothy Rapp, Plaintiffs-Appellees,

v.

GULF REFINING COMPANY, Defendant-Appellee,

Witt & Ross, Inc., Defendant-Appellant.

No. 6178.

Supreme Court of New Mexico.

March 18, 1958.

Rodey, Dickason, Sloan, Mims & Akin, Albuquerque, Heidel & Swarthout, Lovington, Kemp, Smith, Brown, Goggin & White, El Paso, Tex., for appellant.

Williams & Johnson, Hobbs, for appellees Mittags.

Easley, Quinn & Stout, Hobbs, for appellee Hoyt Welch.

Cowan & Leach, Hobbs, for appellee Gulf Refining Co.

KIKER, Justice.

This action arose out of a collision which occurred near the intersection at Texas and 4th Streets in Eunice, New Mexico. One, Taylor, was driving a Gulf truck in a westerly direction. William A. Stearns, driving his own truck, was following the Gulf truck at a point 17½ feet east of the intersection and approximately two feet north of the center line of Texas Street. Stearns, attempting to pass the Gulf truck, collided with that truck and then his truck turned through the intersection into 4th Street and ran ino the Eastside Laundry where the plaintiff, Mrs. Max O. Mittag, and Dorothy Rapp were struck, the latter being fatally injured.

A man by the name of Skelton, who was a witness in the case, was approaching the intersection abovementioned from the opposite direction in Texas Street. Seeing the position of the truck, approaching he slowed his speed and turned to the curb on the side of Texas Street. In addition to Taylor, two other Gulf employees were in the Gulf truck. They also became witnesses.

Stearns and a number of other men, each of whom owned his own truck, were then engaged in hauling caliche for Witt & Ross, Inc., for street work for the Town of Eunice.

Mr. and Mrs. Mittag brought suit for injuries sustained by Mrs. Mittag in the collision and Hoyt Welch, administrator of the Estate of Dorothy Rapp, brought suit for the loss of her life in the collision. Named in the suit as defendants were William A. Stearns, Gulf Refining Company and Witt & Ross, Inc.

The cases were consolidated for purposes of trial and were tried to a jury. At the conclusion of all of the evidence, the Court directed a verdict in favor of Gulf and dismissed cross-complaints which had been filed by other defendants against Gulf. The jury returned its verdict against both Stearns and Witt & Ross, Inc. and in favor of plaintiffs and judgment was entered accordingly. Judgment was also entered in the case against Stearns upon the cross-complaint of Witt & Ross, Inc. for the total amount of the judgments taken against that company, conditioned, however, that execution should issue only after Witt & Ross, Inc. had discharged the judgments of the plaintiffs in whole or in part and only for the part of the plaintiffs' judgments so discharged by cross-complainant.

The defendant, Witt & Ross, Inc. took this appeal from the judgment of the district court.

Appellant states two points as grounds for reversal. The first of these points is that Stearns was an independent contractor and not an employee of Witt & Ross, Inc., and that that corporation is not liable for that done by Stearns.

The jury found that Stearns was an employee of Witt & Ross, Inc., and not an independent contractor, the question having been submitted under appropriate instructions. We must determine, therefore, whether there is substantial evidence in the record to support that finding of the jury.

A man by the name of Roy Bowman, with several other men, including Stearns, had been hauling together at Portales. When the job at Portales had been completed, each of the men began to look for work. Each of these men owned his own truck and furnished his own gasoline and maintenance. Mr. Bowman, knowing of the Eunice job, talked with Mr. Ross of Witt & Ross, Inc., and made application for the work of hauling caliche, giving assurance that there would be sufficient trucks to properly move it. Such arrangements were made as put all these truckers to work at a price of $.35 per yard. Mr. Bowman and his associates considered that it would take from thirty to sixty days to complete this work, but it lasted only thirty days. Witt & Ross, Inc. had a man at the place where the material was loaded. It was the duty of this man to see to it that the truckers loaded the proper amount of caliche and started for the street to which delivery was to be made.

Several streets were being worked upon throughout the 30-day period. When a trucker arrived where the caliche was desired, there was another man working for Witt & Ross who directed as to the place and manner of unloading so that the material could be spread evenly. These truckers had the duty to be present at the hopper at the hour when it began to run so that the caliche as taken from its original source could be loaded on the trucks. They worked only when the "hopper" was being run by the gravel company. Witt & Ross, Inc. had control of the truckers to the extent of telling them where to spot the trucks when loading and when unloading and designation of the street to which the caliche was to go and the manner of its unloading. There were no arrangements for these truckers or for Mr. Bowman to haul any particular amount of caliche. They simply agreed to $.35 per yard to haul the caliche required to the streets being improved. As the loading of each truck was finished, the checker at the point of loading made a ticket showing how much caliche was on the truck and showing also the number of the truck.

When the first payment was made by Witt & Ross, Inc., the check was made to Mr. Bowman who forthwith distributed to the others, giving to each the amount ow-

ing to him as shown by Witt & Ross, Inc. These truckers first discussed among themselves returning the check and asking that each man be given his own check, but it was explained in evidence that because they needed money so badly they decided to handle it as just stated. The checks were thereafter handled in the same manner. The company had placed on the stub attached to each of the checks delivered to Mr. Bowman, the word "subcontractor."

Bowman did not employ any of the truckers. He merely arranged with them to assist in moving the caliche. Each of the truckers was to get all that he earned. Bowman received no part of the money actually figured by Witt & Ross, Inc. as belonging to any other trucker. Each of the truckers considered that he was working for Witt & Ross, Inc. and that said corporation could discharge him at any time, or could put him to doing other work than hauling caliche.

G. R. Davis, superintendent for Witt & Ross, Inc., gave testimony to the effect that he had the right to control the truckers and to tell them where to put the caliche and that the engineers for the company directed as to what streets the caliche should be taken; that the truckers had a right to quit any time and there would be no penalty except they would not get any pay for work not done.

Mr. D. F. Ross testified that he made the arrangements with Mr. Bowman to haul the caliche for $.35 per yard; that no time limit was fixed as to when they were to complete the hauling of the caliche; that there was no provision in the arrangement that forbade him from terminating the relationship at any time. He testified further that it came to his attention that the truckers wanted their checks made individually but that he informed his secretary that they were not to get separate checks and that he did not require that the job be completed in any particular time. Mr. Ross further testified that if Mr. Bowman had not been on the job at any time by reason of illness, he or some other person in his organization would have told the men what to do and would have complete control of them.

This Court has more than once distinguished between an independent contractor and an employee. In Bland v. Greenfield Gin Co., 48 N.M. 166, 146 P.2d 878, 881, the Court quoted from Burruss v. B. M. C. Logging Co., 38 N.M. 254, 31 P.2d 263, as follows:

"The employee renders personal service. The independent contractor may or may not. In both cases, the employer exercises authority. Beyond doubt the character of such authority or control is the usual and generally accepted test. The result to be achieved by the independent contractor is controlled by the employer. But, when the control descends to the details or

to the means and methods of performance, we have a servant or employee. This general test we find variously stated."

In the same case, it was further said:

"The question was, again, before this court in American Employers' Ins. Co. of Boston, Mass., v. Grabert, 39 N.M. 173, 42 P.2d 1116, 1117. The dominant element, in this case, against the contention that the deceased was an independent contractor, was the unchallenged finding of the trial court that the arrangement could be terminated, at any time, by either claimant, or the mining company, with or without cause, and without either party incurring liability for so doing. The court said:

"'* * * The power of instant discharge of the plaintiff by the mining company dominates the elements otherwise sometimes employed as tests to determine the question whether a person in service is an employee or an independent contractor.'"

As to the distinction between an independent contractor and employee see, also, De Palma v. Weinman, 15 N.M. 68, 103 P. 782, 785, 24 L.R.A.,N.S. 423; Sucetti v. Jones' Estate, 38 N.M. 327, 32 P.2d 815; In re Maurray, 130 Me. 181, 154 A. 352, 75 A.L.R. 720.

We have shown above that there is substantial evidence from which it might be said that the truckers in this case were not independent contractors; and we have also shown that there is substantial evidence from which it might be concluded that the truckers were employees of Witt & Ross, Inc. The evidence is conflicting and it became the duty of the court to permit the jury to determine whether the truckers were independent contractors or employees. Manby v. Voorhees, 27 N.M. 511, 203 P. 543; Jones v. Jernigan, 29 N.M. 399, 233 P. 100; Salas v. Olmos, 47 N.M. 409, 143 P.2d 871; Southern Union Gas Co. v. Cantrell, 56 N.M. 184, 241 P.2d 1209; Vehn v. Bergman, 57 N.M. 351, 258 P.2d 734.

The second proposition submitted by the appellant, Witt & Ross, Inc., is that the court should have held that the evidence raised an issue of negligence against the Gulf Refining Company so that the question of its liability should have been submitted to the jury.

We have carefully reviewed the record on the question and can find no substantial evidence therein sufficient to raise the issue of concurrent negligence on the part of Gulf Refining Company.

The verdict and judgment of the lower court should be affirmed with the costs of

the appeal to this court being assessed to the appellants.

It is so ordered.

LUJAN, C. J., and McGHEE and COMPTON, JJ., concur.

SADLER, J., not participating.