469 P.2d 520

Clarence Eugene HARLESS, Plaintiff-Appellee,

v.

Marvin EWING, Defendant-Appellant.

No. 416.

Court of Appeals of New Mexico.

May 1, 1970.

Lowell Stout, Hobbs, for appellant.

Warren F. Reynolds, Easley & Reynolds, Hobbs, for appellee.

## OPINION

WOOD, Judge.

We reversed a summary judgment for defendant in Harless v. Ewing, 80 N.M. 149, 452 P.2d 483 (Ct.App.1969). The case has now been tried. The jury returned a verdict for plaintiff; defendant appeals. The issues concern: (1) res ipsa loquitur; (2) the loaned employee doctrine; (3) volunteer; and (4) assumption of risk. We consider each of these issues and affirm. Since the issues are basically resolved by the evidence, we review it before applying it to the legal questions presented.

Mr. Swift, plaintiff's employer, had an agreement to haul caliche by the yard. He had three trucks of his own. He hired additional trucks. Two of the additional trucks were hired from defendant. The hiring rate was by the hour and included the truck and driver. The rate applied from the time the trucks left defendant's yard until they returned to the yard, but did not apply to breakdown time or time for lunch. Out of the hourly rate paid by Swift, defendant paid the drivers' wages and the trucks' operating expenses.

When defendant's trucks reached Swift, " * * * we were already hauling. We just told them to fall in line, follow one of the other trucks out and they knew where to go to." Swift gave defendant's drivers directions and instructions as to what he wanted done; " * * * where to pick up the dirt and where to take it to. * * * " There were no instructions as to how to drive the trucks or how to take care of the wheels of the trucks.

One of defendant's trucks had been loaded and was driving up an incline out of the loading pit when the dual wheels came off the right rear of the truck. The outside wheel rolled off to the side; the inside wheel was pinned beneath the truck.

The breakdown prevented other trucks from entering or leaving the pit without a detour. Swift had the driver dump his load. Swift then had plaintiff raise the truck with a loader. Swift pulled the inside wheel from under the truck and rolled it six to eight feet away from the truck.

One or two of the wheel lugs had sheared off; others were bent. Swift told plaintiff to get a cheater pipe. The cheater was to be used to straighten the bent lugs. The purpose was to straighten the bent lugs, put the outside wheel on the truck and move the truck from the incline.

When Swift moved the inside wheel from under the truck, he noticed the rim of the wheel was bent. It was bent " * * * in the middle. Where it was put together." Air escaped from between the rim and the tire, hurling the wheel through the air. As plaintiff turned to get the cheater, the wheel struck plaintiff in the face.

The elapsed time from breakdown to accident was four or five minutes. The elapsed time from removing the tire from under the wheel to accident was not over two minutes. There was no indication or warning that air was escaping from the tire, or would escape, prior to the time it did escape.

The truck driver testified he had checked the lugs on the truck on his first load. The breakdown occurred on the third load. He testified that a rough road will sometimes loosen the wheels of a truck. Several miles of the haul were on rough roads. There is evidence that defendant had instructed the driver to check the lugs everytime he was "on the ground." The driver explained "on the ground" to mean whenever he happened to be out of the truck (such as waiting on other trucks). The driver was not "on the ground" when dumping

a load. The driver testified it wasn't necessary to check the lugs after every load.

The driver also testified that he had been the only driver of the truck, that the wheels had been tightened with power tools; that there had never been any difficulty with loose wheels and that he could recall no repair work on them.

Swift testified that if a wheel is not on tight, the lugs will loosen, the weight of the truck will bend them or shear them off, and "* * * finally there isn't enough to hold the weight of the load and it [the wheel] will fall off." He testified that in his experience "it is not uncommon" for trucks to lose wheels. Because of defendant's emphasis upon this phrase, we point out the context of this testimony is that it is not uncommon for wheels to come off in hauling over rough roads because the wheels become loose. Swift also testified that one of the reasons for a loose wheel is that dirt prevented tightening when the tightening was attempted.

*Res ipsa loquitur.*

The jury was instructed on the doctrine of res ipsa loquitur. See U.J.I. 12.14. Defendant objected, contending before the trial court, and here, that the doctrine was not applicable. The first three of defendant's claims go to the facts for application of the doctrine; the fourth claim goes to facts removing its application; the fifth to the effect to be given plaintiff's evidence.

The first three issues are based on Hisey v. Cashway Supermarkets, Inc., 77 N.M. 638, 426 P.2d 784 (1967), which states:

"The factual basis necessary as a premise for application of res ipsa loquitur requires proof that (1) plaintiff's injury was proximately caused by an agency or instrumentality under the exclusive control of the defendant; and (2) the incident causing the injury is of the kind which ordinarily does not occur in the absence of negligence by the person having control of the instrumentality. * * *"

(a) Exclusive control—evidence.

Defendant claims that plaintiff failed to prove exclusive control in defendant, that the undisputed evidence is that defendant did not have exclusive control of the truck. He refers us to the activities of Swift, and plaintiff, after the wheel fell off. He also refers us to the undisputed fact that the truck driver took no part in these activities other than dumping the load. This evidence does not resolve the question of exclusive control. Renfro v. J. D. Coggins Company, 71 N.M. 310, 378 P.2d 130 (1963) states:

"* * * the requisite control is not necessarily control exercised at the time of the injury but may be control exercised at the time of the negligent act which subsequently results in injury, * * *"

Here, the chain of events resulting in plaintiff's injury follows clearly from the wheel falling off. We are not concerned with control after the breakdown, but rather with control prior to the breakdown.

Defendant contends he did not have exclusive control after he rented the truck and its driver to Swift. The only evidence, however, is that Swift exercised no control over the maintenance of the truck. He did not tell the driver how to care for the wheels of the truck, he did not pay for breakdown time. There is evidence of control in defendant—he gave instructions to the driver about checking the wheels and paid the truck's operating expense.

The issue of exclusive control in this case pertains to the maintenance of the truck. Plaintiff introduced evidence of defendant's exclusive control of the maintenance.

(b) Exlusive control—causation.

Defendant asserts there is only speculation to connect defendant's control with plaintiff's injury. Renfro v. J. D. Coggins Company, supra. The evidence indicates defendant controlled the truck

maintenance, including the tightening of the wheels. Swift's testimony supplied the causation element; he testified as to the consequences of a wheel not being tight.

(c) Accident not occurring in the absence of negligence.

Defendant contends plaintiff failed to prove the accident was one that ordinarily doesn't happen in the absence of negligence by the person having control. He goes further; he asserts the evidence is that the accident could have happened without negligence on the part of anyone. He relies on the testimony of Swift (wheels coming off are not uncommon) and the truck driver (no trouble with the truck, wheels mounted with power tools, etc.).

We agree that inferences may be drawn from the evidence of Swift and the truck driver to the effect that the wheel could have come off the truck without negligence on the part of defendant. However, a contrary inference may also be drawn from the testimony of Swift—that the wheel would not have come off if it had been properly tightened. Thus, defendant would have us weigh the evidence on appeal, would have us decide which inference should be drawn. But we do not do this. Plaintiff had to prove each of the facts on which to apply the doctrine. Hisey v. Cashway Supermarkets, Inc., supra. It was for the jury to determine whether those elements, including the element here in question, have been proved. See U.J.I. 12.14.

Further, and apart from the conflicting inferences discussed above, it is the character of the accident, rather than the fact of the accident, that determines whether the doctrine is applicable. Hanson v. Dalton Coal & Materials Co., 264 S.W.2d 897 (Mo.App.1954). "It is common knowledge that a wheel will not ordinarily leave a car unless there has been a lack of reasonable care in its installation and maintenance. * * *" Spica v. Connor, 56 Misc.2d 364, 288 N.Y.S.2d 719 (1968); McLaughlin v. Lasater, 129 Cal.App.2d 432, 277 P.2d 41, 46 A.L.R.2d 106 (1954); Annot., 46 A.L.R.2d 110 (1956). When plaintiff introduced evidence that defendant had exclusive control of the truck's maintenance and evidence that the wheel had in fact come off, he had introduced evidence of an accident which ordinarily doesn't occur in the absence of negligence by the person having control.

(d) Applicability of the doctrine in the light of plaintiff's evidence.

Plaintiff introduced evidence that defendant, through his truck driver, was negligent in failing to check the wheels of the truck after each load. The fact that plaintiff introduced evidence to prove specific negligence does not prevent application of the doctrine. Tuso v. Markey, 61 N.M. 77, 294 P.2d 1102 (1956).

Defendant claims plaintiff went further than introducing evidence of specific negligence. He asserts plaintiff established how the accident occurred and this evidence refuted any inference of negligence arising under the doctrine. Since, according to defendant, the facts negate an inference of negligence, the doctrine could not properly be applied. See North Memphis Sav. Bank v. Union Bridge & Const. Co., 138 Tenn. 161, 196 S.W. 492 (1917).

Zanolini v. Ferguson-Steere Motor Co., 58 N.M. 96, 265 P.2d 983 (1954) states: "* * * where there is no want of evidence as to the cause of the accident and the manner in which it occurred, a situation is not presented for its [the doctrine's] application. * * *" Tuso v. Markey, supra, states:

"Of course had appellant, by proof of specific acts of negligence, established all the facts as to how the accident happened, thereby dispelling any inference drawn by force of the rule, the doctrine would not be available to her, notwithstanding such general allegations of negligence. In such circumstances, she would be limited solely to inferences, if any, which might arise from proof of specific acts. * * *"

Is there "no want of evidence as to the cause;" has plaintiff established "all the facts" so there is no room for an inference

of negligence? Certainly we cannot say as a matter of law what caused the wheels to come off. Was it because the truck driver failed to tighten the wheels? Was it because there was dirt in the wheel that did not permit the wheel to be tightened? Was it because the wheels loosened on rough roads and there was insufficient checking for this condition? Was it some other cause? We do not know. Since we do not know the true cause, the evidence does not dispel an inference of negligence under the doctrine. Hanson v. Dalton Coal & Materials Co., supra.

(e) Effect of plaintiff's evidence.

■■■■ All the evidence introduced in this case was by plaintiff; defendant rested at the close of plaintiff's case. Defendant reminds us that plaintiff is bound by his own evidence. We agree. Romero v. Turnell, 68 N.M. 362, 362 P.2d 515 (1961). Defendant asserts that plaintiff's evidence shows there were no facts for application of the doctrine or that its applicability had been refuted. We rejected each of these contentions in deciding the above four issues. However, defendant asserts that in rejecting the four contentions we necessarily did not hold plaintiff to the evidence that plaintiff introduced.

The contention mistakes when the doctrine of res ipsa loquitur may be applied. Tuso v. Markey, supra, quoted the following from Dallas Railway & Terminal Co. v. Clayton, 274 S.W.2d 422 (Tex.Civ.App. 1954) with approval:

"'* * * We think that in cases in which a plaintiff is entitled to rely on the doctrine of res ipsa loquitur, he ought not to be penalized by the loss of the presumption because he has been willing to go forward and do the best he can to prove specific acts of negligence. On the contrary he ought to be encouraged to give the court, the jury, and even the defendant the benefit of whatever facts, if any, his effort may develop toward revealing the specific causes of the mishap. And of course if a plaintiff should not be penalized for making the effort, he ought not to be later penalized for succeeding. * * *'"

Until the jury decided this case, we could not know whether plaintiff had proved specific acts of negligence, an absence of negligence on defendant's part, or the facts on which to apply the doctrine of res ipsa loquitur. In this case there was evidence, or inference, as to each of these. Plaintiff was bound by his evidence, but here he was bound to evidence indicating three possible results before the jury decided the facts.

The essence of defendant's claim is that the trial court should have decided the issue of applicability of the doctrine as a matter of law and should not have permitted the doctrine to be considered by the jury. But with the conflicting inferences to be drawn from plaintiff's own evidence, the applicability of the doctrine was for the jury. Hanson v. Dalton Coal & Materials Co., supra.

*Loaned employee doctrine.*

■■■■ This issue, and the two issues discussed subsequently—volunteer and assumption of risk—were raised by defendant in an effort to avoid liability because of any negligence on the part of the driver of his truck. In Harless v. Ewing, supra, we held the trial court correctly refused to decide that the driver was an employee of Swift as a matter of law. The issue here is whether there was a question of fact as to such employment since the trial court refused defendant's request to instruct the jury on this issue.

Defendant claims there is an issue of fact as to whether the driver had become Swift's employee. He relies on the hiring arrangement and additional facts, i. e.: there was no agreement that defendant's trucks would be used for a certain number of hauls, Swift could terminate the arrangement at any time, identical or similar work was being done with Swift's trucks and drivers. We agree that under all the circumstances of this case, there was a factual issue as

to the status of defendant's driver insofar as the hauling was concerned. Shipman v. Maco Corporation, 74 N.M. 174, 392 P.2d 9 (1964); Mittag v. Gulf Refining Company, 64 N.M. 38, 323 P.2d 292 (1958).

The factual issue involving the hauling does not benefit defendant. No hauling is involved in connection with the accident resulting in plaintiff's injury. The issue here involves the maintenance of defendant's trucks; specifically, the truck whose dual wheels came off. The undisputed evidence is that defendant maintained the truck and gave instructions to the driver concerning tightening of the wheels. Swift's arrangement with defendant was that Swift did not pay for breakdown time. There being no evidence that the driver became Swift's employee in connection with maintenance of the truck, the trial court did not err in refusing to instruct the jury on that issue. Compare Scott v. Murphy Corporation, 79 N.M. 697, 448 P.2d 803 (1968); Davison v. Tom Brown Drilling Company, 76 N.M. 412, 415 P.2d 541 (1966); Huff v. Dunaway, 63 N.M. 121, 314 P.2d 722 (1957).

*Volunteer.*

In Harless v. Ewing, supra, we held the trial court correctly refused to hold plaintiff a volunteer as a matter of law. The issue here is whether there was a factual question as to whether plaintiff was a volunteer since the trial court refused to submit this issue to the jury.

Defendant contends there was a factual issue. He states: " * * * The evidence shows that the Plaintiff and his employer, without being asked or without asking permission, took charge * * *, and through their own physical efforts commenced working to get the truck moved. The driver Scott did not help in these proceedings, except to operate the mechanism of the truck necessary to dump its load. * * * The acts of the Plaintiff and his employer were entirely voluntary and unsolicited. * *"

The facts on which defendant relies are accurately stated. However, they are in-complete. Swift, plaintiff's employer, was in the business of hauling caliche. Swift and plaintiff loaded the trucks which carried the caliche. The breakdown occurred on an incline leading out of the loading pit. This breakdown interfered with Swift's business operation; other trucks could not enter or leave the loading pit without a detour. Specifically, it was in Swift's business interest to remove the truck which obstructed Swift's business operation. "The work he [Swift and plaintiff] was doing was getting the truck out of the way; he wasn't repairing the truck. * * *" Harless v. Ewing, supra.

Defendant relies on Jones v. George F. Getty Oil Co., 92 F.2d 255 (10th Cir. 1937) but that case does not define the concept of "volunteer" other than indicate there may have been a volunteer situation under its facts. There, as here, the injured plaintiff performed work at the request of his employer. There, as here, the work being performed was in the interest of plaintiff's employer. The similarity ends at this point. In *Getty*, supra, the work being performed was the work of defendant; here it was the work of plaintiff's employer—removing obstructions interfering with the trucks hauling the caliche. In *Getty*, supra, the injured plaintiff was helping to repair a well; here no repairs were being done.

Defendant also relies on Bogart v. Hester, 66 N.M. 311, 347 P.2d 327 (1959). That case is authority against him. It cites with approval the following definition of volunteer from Kelly v. Tyra, 103 Minn. 176, 114 N.W. 750, 115 N.W. 636, 17 L.R.A.,N.S., 334 (1908):

> " 'A volunteer is one who intrudes himself into matters which do not concern him, or does or undertakes to do something which he is not legally nor morally bound to do, and which is not in pursuance or protection of any interest. * * *' "

Plaintiff's activities in connection with the disabled truck were in the protection of his employer's interest. In pursuing that interest, we assume that some benefit was

**548**

rendered or would be rendered to defendant in connection with the disabled truck. Kelly v. Tyra, supra, states:

"* * * [A] servant of a shipper, who, to prevent delay, aids the servants of a carrier in shunting cars, is not a mere volunteer assisting defendant's servants, although on request, but is regarded as having been on defendant's premises with a purpose of expediting the delivery of his own goods. The carrier is liable to him for the negligence of its servants. * * * 'The hinge on which the cases turn is the presence or absence of said [self] interest. * * *'"

Even though the truck driver had not requested assistance, plaintiff was not a volunteer because his purpose, his self-interest, was expediting the delivery of caliche. The undisputed facts show there was no jury issue as to "volunteer."

*Assumption of risk.*

■ Defendant contends there is a factual question as to whether plaintiff assumed the risk and that the trial court erred in not submitting the question to the jury. He states: "* * * after the wheel fell off the Plaintiff knew or should have known of the danger and voluntarily assumed the risk from such danger when he and his employer tried to move the truck. * * *"

Tapia v. Panhandle Steel Erectors Company, 78 N.M. 86, 428 P.2d 625 (1967) states:

"Even though the physical surroundings that create the danger are known, a person will not be held to have voluntarily assumed a risk where the specific danger which produced the injury is unknown. * * *"

Garcia v. Barber's Super Markets, Inc., 81 N.M. 92, 463 P.2d 516 (Ct.App.1969).

There was no indication that air would escape from the tire. There is nothing indicating this specific danger was known or should have been known; there is nothing indicating plaintiff knew the rim was bent.

There is no evidence raising an issue as to assumption of risk. Compare Bogart v. Hester, supra. The trial court did not err in refusing to instruct on assumption of risk.

Affirmed.

It is so ordered.

SPIESS, C. J., and OMAN, J., concur.