872 P.2d 361

**Carmen TRUJEQUE, Petitioner,**

v.

**SERVICE MERCHANDISE COMPANY,
Respondent.**

No. 20368.

Supreme Court of New Mexico.

March 29, 1994.

John Perrine, Albuquerque, for petitioner.

Sager, Curran, Sturges & Tepper, P.C., Christopher P. Bauman, C. Kristine Osnes, Albuquerque, for respondent.

## OPINION

RANSOM, Justice.

Carmen Trujeque sued Service Merchandise for injuries sustained when a chair that Service Merchandise provided for customers collapsed as Trujeque sat down. The trial court instructed the jury on res ipsa loquitur, and the jury returned a special verdict for the defendant. The Court of Appeals affirmed in an unpublished opinion. We issued a writ of certiorari to review the error alleged to have occurred when, in response to a question from the jury foreman, the trial judge instructed the jury on the meaning of the term "exclusive control." Because we find that the instruction given was inappropriate under the facts of this case, we reverse

the Court of Appeals and the trial court and remand for a new trial.

*Factual and procedural history.* Trujeque was shopping at Service Merchandise and waiting for her order to be processed when she decided to sit in one of the chairs that Service Merchandise provided for its customers' convenience. As she sat down, the chair broke, causing her to fall and injure her arm. The store manager took the chair pieces and apparently disposed of them before suit was filed. In addressing the store's motion for summary judgment, the trial court ruled that Trujeque could present her case to the jury only on the theory of res ipsa loquitur. At trial, Trujeque provided evidence that the chair was owned and maintained by Service Merchandise. Service Merchandise provided evidence from which the jury could infer that it was more probable than not that other customers also had sat in the chair on the day of the accident. In opening argument, the attorney for Service Merchandise told the jury that to find Service Merchandise liable, it would have to find that "Service Merchandise or its employees were the last people to use the chair before Mrs. Trujeque sat in it" and that "it's more probable than not that [the] chair had been used during that day by a customer." Trujeque argued in closing that "[e]xclusive management and control is a common sense idea that what's going on is their business, their concern, their responsibility, their control, their management."

During discussions concerning jury instructions, Service Merchandise tendered Instruction 14A, stating that the instruction adopted the language of *Gonzales v. Shoprite Foods, Inc.,* 69 N.M. 95, 364 P.2d 352 (1961). The instruction articulated a standard of proof for the element of "exclusive control":

In order to prove that the defendant had exclusive control and management over the instrumentality causing plaintiff's accident and injuries, plaintiff must show from the evidence that others did not have an opportunity of equal access to the instrumentality.

Trujeque objected as follows:

Mr. Perrine: The second phrase, "plaintiff must show from the evidence that oth-

ers did not have an opportunity of equal access to the instrumentality." First of all, is any additional evidentiary requirement after the trial; secondly "others" would be 41,000 customers.

The court refused to give the instruction.

The jury was instructed in accordance with SCRA 1986, 13–1623 (Repl.Pamp.1991), that Trujeque had the burden of proving that the chair was under the "exclusive control and management" of Service Merchandise. Shortly after the jury retired, the jury foreman presented a written question to the court requesting a "precise legal definition of the term 'exclusive control.'" The trial judge summoned counsel and proposed instructing the jury according to Instruction 14A. Trujeque again objected:

Mr. Perrine: [Tuso v.] Markey[, 61 N.M. 77, 294 P.2d 1102 (1956),] is a chair case, not a merchandise case. Whether—which defendant is arguing Gonzales v. Shoprite, 69 N.M. 95, 364 P.2d 352, that that case should apply to this particular case. Gonzales v. Shoprite is a merchandise case where merchandise is stacked in defendant's self-service supermarket. And there was—the Court accepted that the stacking was done in a customary manner; and that, therefore, the normal service of 900 to a thousand people on the same day of the week did not mean that that merchandise was within the sole and exclusive control of defendant. However, Tuso v. Markey is a chair case.

. . . .

Mr. Perrine: ... There's another case, Chapin [v. Rogers, 80 N.M. 684, 459 P.2d 846 (Ct.App.1969),] ... and it's a similar type of chair case.

In Tuso the plaintiff alleged, generally, the unsafe condition of the chair and ... that the accident ... would not have happened if the defendant used due care since the chair was within [the] sole and exclusive control of the management.

This Court found that, "The general allegations of negligence, accompanied by an allegation and proof that the instrumentality causing the accident was under the exclusive control of appellees, warranted its application."

I would vigorously argue that this is a chair case and not a stack of merchandise that can become under the control, or maybe different customers who are bumping it around and changing the conditions of the stability, and thereby causing a potential for injury to a subsequent customer. This is not the same type of case at all, and this instruction should not apply since there are 41,000 other customers who, naturally, are going to be using that chair.

Despite this objection, the trial court submitted the instruction to the jury. After receiving Instruction 14A, the jury asked, "Does the sitting in the chair by a customer constitute *equal access* to the instrumentality (chair)?" Over Trujeque's objection, the court answered affirmatively.

■ *Trujeque sufficiently preserved error for appeal.* Service Merchandise argues that Trujeque did not tender a different instruction or point out the specific vice in the challenged instruction as required by *Budagher v. Amrep Corp.*, 97 N.M. 116, 119, 637 P.2d 547, 550 (1981). It contends that Trujeque's arguments on appeal that the instruction is "rigid and inflexible" and mischaracterized the legal principle for which *Gonzales* stands were not raised below and therefore should not be considered by this Court. Although we agree that neither *Tuso* nor *Chapin* contain a definition of the phrase "exclusive control and management," we believe that instructions to the jury require no definition of that self-explanatory phrase. It is for counsel to argue the facts and inferences to be drawn as to exclusive control and management, subject to objection that a meaning is being attributed to that phrase that is not intended by the law. Trujeque sufficiently drew the court's attention to the fact that this case is to be distinguished from *Gonzales* and that New Mexico appellate courts have applied res ipsa loquitur in chair cases similar to the one at bar without requiring proof that would negate use by other customers. We also believe that Trujeque had defined what she interpreted the meaning of "exclusive control" to be in closing argument. We find that the error was sufficiently called

to the trial court's attention and preserved for appeal.

■ *The doctrine of res ipsa loquitur.* The doctrine of res ipsa loquitur applies only when evidence establishes that in the ordinary course of events an injury would not occur except through negligence of the person in exclusive control and management of the injuring instrumentality. *See* SCRA 13–1623; *Hepp v. Quickel Auto & Supply Co.,* 37 N.M. 525, 528, 25 P.2d 197, 199 (1933). "It bases its chief claim to justification on the fact that ordinarily the cause of the injury is accessible to the party charged and inaccessible to the person injured." *Hepp,* 37 N.M. at 528, 25 P.2d at 199. Generally, cases in which the theory of res ipsa loquitur is presented fall into two categories: those in which the defendant directly uses an instrumentality so as to cause injury, *see, e.g., Archibeque v. Homrich,* 88 N.M. 527, 528–29, 543 P.2d 820, 821–22 (1975) (driver ran off road, killing himself and passenger/owner); *Buchanan v. Downing,* 74 N.M. 423, 424, 394 P.2d 269, 270 (1964) (plaintiff sued doctor for injuries resulting from injection), and those in which the defendant is in charge of, created, or last controlled an instrumentality that inexplicably becomes dangerous and injures the victim outside of the defendant's presence, *see, e.g., Waterman v. Ciesielski,* 87 N.M. 25, 27, 528 P.2d 884, 886 (1974) (plaintiff truck driver sued warehouse operator for injuries sustained while unloading crate that unexpectedly shifted); *Tafoya v. Las Cruces Coca–Cola Bottling Co.,* 59 N.M. 43, 45–46, 278 P.2d 575, 577 (1955) (plaintiff sued bottler for injuries caused by drinking tainted soda); *Begay v. Livingston,* 99 N.M. 359, 363, 658 P.2d 434, 438 (Ct.App.1981) (decedent's estate sued motel owner after heating exhaust vent was found inexplicably detached from ceiling duct, causing carbon monoxide poisoning of decedent), *rev'd in part on other grounds,* 98 N.M. 712, 714, 652 P.2d 734, 736 (1982); *Strong v. Shaw,* 96 N.M. 281, 282–83, 629 P.2d 784, 785–86 (Ct.App.1980) (plaintiff sued mobile park owner for damages caused by fire that started in hot water closet located outside plaintiff's apartment), *cert. quashed,* 96 N.M. 543, 632 P.2d 1181 (1981); *Harless v. Ewing,* 81 N.M. 541, 543–45, 469 P.2d 520, 522–24 (Ct.App.1970) (plaintiff sued truck owner for damages sustained when tire fell off truck and then blew up). The case at bar falls into the second category.

■ *The meaning of "exclusive control and management" is fact specific.* In order to make a prima facie case from which the jury may infer that the defendant is liable for the damages caused by the instrumentality outside of the defendant's presence, the plaintiff must provide evidence of the character of the occurrence and of the exclusive control of the defendant. The plaintiff's burden may vary according to the facts of the case. *See, e.g., Tafoya,* 59 N.M. at 49, 278 P.2d at 579 (stating that plaintiff's burden there to show "there was no reasonable probability of the [instrumentality] having been tampered with" since leaving defendant's control); *Begay,* 99 N.M. at 363, 658 P.2d at 438 (stating that "[t]he phrase 'exclusive control and management' of an instrumentality means 'the sole power or authority of defendant to superintend, direct or oversee' the instrumentality."); *Strong,* 96 N.M. at 283–85, 629 P.2d at 786–88 (stating that plaintiff satisfied burden of establishing that landlord had exclusive control and management of outside water heater closet even though others had access to it); *Harless,* 81 N.M. at 544, 469 P.2d at 523 (holding that plaintiff had introduced sufficient evidence of defendant's exclusive control of maintenance of a truck by showing defendant gave instructions on maintenance and paid truck's operating expense). "The essential question becomes one of whether the probable cause is one which the defendant was under a duty to the plaintiff to anticipate or guard against." Restatement (Second) of Torts § 328(D) cmt. g (1965).

While the two "collapsing chair" cases in New Mexico, *Tuso* and *Chapin,* imply that a showing of ownership, management, and possession of chairs in a business establishment with many invitees is sufficient to establish exclusive control, they do not expressly state what the plaintiff's burden is in those cases. There are, however, many cases from other jurisdictions expressly holding that such a showing is sufficient. *See, e.g., Rose v. Melody Lane of Wilshire,* 39 Cal.2d 481, 247 P.2d

335, 338 (1952) (en bank) (stating that "[s]o far as construction, inspection, or maintenance ... were concerned, [the lounge owner] had exclusive control" of the lounge stool that collapsed); *Gresham v. Stouffer Corp.*, 144 Ga.App. 553, 241 S.E.2d 451, 452 (1978) (stating that "[i]t is clear ... that the defendant owned and operated the restaurant ... [and] that the chair was furnished by the restaurant to the plaintiff for his use as a business invitee.... [Therefore,] a jury would be authorized to conclude that the chair was in the full control of the defendant and that the defendant was responsible for its maintenance."); *Herries v. Bond Stores*, 231 Mo.App. 1053, 84 S.W.2d 153, 157 (1935) (stating "[w]hat more natural, what more in consonance with sound reason, and sound common sense, than to attribute the defective condition of the chair ... to defendant, the owner and custodian of the chair," and holding that all plaintiff must show is that she was business invitee and was furnished a chair that collapsed to establish a prima facie case under the doctrine); *Benedict v. Eppley Hotel Co.*, 159 Neb. 23, 65 N.W.2d 224, 229 (1954) (holding that evidence of defendant's ownership, possession, and control were enough to establish exclusive control); *Judson v. Camelot Food, Inc.*, 104 Nev. 324, 756 P.2d 1198, 1201 (1988) ("A business proprietor retains exclusive control of seating while it is being properly used by patrons."); *Finocchio v. Crest Hollow Club at Woodbury, Inc.*, 184 A.D.2d 491, 584 N.Y.S.2d 201, 202 (1992) (holding that trial court erred in refusing instruction because it used an overly rigid interpretation of the exclusive control requirement; evidence that club owned chair and that employees took chair after accident and offered no evidence to support inference of some other possible cause or the act of a third person with access to chair was enough under the circumstances of the case to warrant submission to jury).

We are aware one jurisdiction holds that because chairs in use are under the control of the user, the exclusive control element cannot be met as a matter of law. *See Kilgore v. Shepard Co.*, 52 R.I. 151, 158 A. 720, 721 (1932). This argument has been widely criticized as a ridiculous conclusion. *See Judson*, 104 Nev. 324, 756 P.2d at 1201 n. 3 (quoting W. Page Keeton, *Prosser & Keeton on Torts*, 249–250 (5th Ed.1984)). Also, the court in *Mineo v. Rand's Food Shops, Inc.*, 32 N.Y.S.2d 23, 25 (N.Y. City Ct.1941), held that chairs in restaurants are under temporary control of various patrons and subject to injury during such use, so there can be no exclusive control in defendant. We believe that the theory upon which *Mineo* and *Kilgore* are based is "an overly rigid interpretation of the requirement of exclusive control," *Finocchio*, 184 A.D.2d 491, 584 N.Y.S.2d at 202, and that it is "artificial and ignores the purpose of the requirement that defendant have exclusive control." *Rose*, 39 Cal.2d 481, 247 P.2d at 338.

■ *It was reversible error to give Instruction 14A.* Service Merchandise contends that the definition of exclusive management and control based on *Gonzales* is applicable and does not modify the res ipsa loquitur uniform jury instruction. We disagree. The issue in *Gonzales* was whether the usual and customary manner of stacking self-service merchandise over a period of years was improper in and of itself and created a dangerous condition. In denying the applicability of the doctrine of res ipsa loquitur, the Court specifically observed that the cafeteria chair case of *Tuso* is not analogous to a case dealing with the display of merchandise to which, on a normal Saturday, a thousand customers had equal access. Such access defeated the element of sole and exclusive control necessary for application of the doctrine of res ipsa loquitur. 69 N.M. at 100–01, 364 P.2d at 355–56. Although it is not at all clear, we assume the Court meant for "equal access" to refer to access by the store management as well as by customers. The implication that access itself prevents application of res ipsa loquitur, requiring Trujeque to prove a negative, i.e., that no one had an opportunity of access equal to that of Service Merchandise, was improper when applied to an instrumentality the anticipated safe use of which, if properly maintained, would be reasonable for any number of customers. The same cannot be said of the anticipated safety of boxes and bottles of shelved merchandise stacked for self service as in *Gonzales*. Any argument that a customer's access is *never*

"equal" to that of the owner who maintains a chair for use by customers of the store is a bit too subtle an argument to require of a plaintiff. The issue is whether "access" makes it unreasonable to infer that the maintainer of the instrumentality was responsible for a danger in its use.

 *Conclusion.* That third parties may have had access to the chair did not preclude Service Merchandise from having exclusive control and management of the chair within the meaning of the doctrine of res ipsa loquitur, and did not preclude a reasonable inference that Service Merchandise was responsible for a danger in its use. Once Trujeque established that an accident occurred that normally does not occur absent negligence and that Service Merchandise owned, maintained, and provided the chair for use by its customers on the store's premises, she satisfied her burden of making a prima facie case from which the jury could infer negligence. Service Merchandise could then choose to present no evidence or choose to rebut the inference by offering evidence that a latent manufacturing defect was the cause of the collapse or perhaps that some third party bore responsibility for the collapse of the chair. It has long been held that

> [a]ll that the plaintiff should be required to do in the first instance is to show that the defendant owned, operated, and maintained, or controlled and was responsible for the management and maintenance of, the thing doing the damage.... When he has done this, he has cast a burden on the defendant, who may then proceed to show that the accident was occasioned by vis major, or by other causes for which he was not responsible.

*Chenall v. Palmer Brick Co.,* 117 Ga. 106, 43 S.E. 443, 445 (1903). "*[R]es ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; ... that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury...." *Sweeney v. Erving,* 228 U.S. 233, 240, 33 S.Ct. 416, 418, 57 L.Ed. 815 (1913) (quoted by *Ball Memorial Hosp. v. Freeman,* 245 Ind. 71, 196 N.E.2d 274, 278 n. 2 (1964); *Helmke v. Goff,* 182

Mont. 494, 597 P.2d 1131, 1133 (1979); *Wise v. St. Louis Pub. Serv. Co.,* 357 S.W.2d 902, 908 (Mo.1962) (en banc) (Hyde, J., concurring). Trujeque met her burden, and instructing the jury that she also had to prove that no other party had an opportunity of equal access to the chair was reversible error. We reverse and remand for a new trial.

**IT IS SO ORDERED.**

BACA and FROST, JJ., concur.